# COURT OF APPEALS OF TEXAS.

## GALVESTON TERM, 1878.

### PEDRO LASTRO v. THE STATE.

1. CONSTITUTIONAL LAW — JUDICIAL POWER. — Though unquestionable that the courts are empowered to adjudge unconstitutional legislative enactments to be invalid, yet it is equally well settled that this power is not to be exercised in doubtful cases, nor unless the enactment is clearly inconsistent with constitutional provisions.

2. CONSTITUTIONAL CONSTRUCTION. — To written constitutions is especially applicable the rule of construction which requires the whole to be considered in determining the intent of each part. If different portions appear to conflict, the courts will harmonize them, if practicable, so as to render every part operative rather than nugatory.

3. SAME — STOCK LAW. — Section 23, article 16, of the Constitution of 1876 provides that the Legislature may "pass laws for the regulation of live stock and the protection of stock-raisers in the stock-raising portion of the state, and exempt from the operation of such laws other portions, sections, or counties; and shall have power to pass general and special laws for the inspection of cattle, stock, and hides, and for the regulation of brands; *provided*, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby, and approved by them, before it shall go into effect." *Held*, that the words *special* and *local* are here used in the same sense, and that the proviso is applicable to the first as well as to the second clause of the section. But *held, further*, that a law, such as the act of August 23, 1876, for the general regulation of stock and protection of stock-raisers in the stock-raising portion of the state, though exempting many counties from its operation, is not a "local law" within the meaning of the proviso; and, therefore, it was not necessary that the said act be submitted to the freeholders of any section for their approval.

4. SAME. — Nor is the said act of 1876 violative of section 19 of the Bill of Rights, which provides that "no citizen of this state shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by due course of the law of the land."

APPEAL from the County Court of Victoria. Tried below before the Hon. R. H. COLEMAN, County Judge.

The opinion of the court discloses the character and material facts of the case. It was rendered at Austin in June, 1877, but ordered to be recorded at Galveston because the case pertained to that branch of the court.

*C. I. Evans*, for the appellant. Pedro Lastro, the appellant, was convicted, in the County Court of Victoria County, of purchasing three hides of cattle without obtaining from the owner thereof, at the time of purchasing the same, a bill of sale in writing properly authenticated, as provided and required by sections 12 and 39 of an act entitled "An act to encourage stock-raising, and for the protection of stock-raisers," approved August 23, 1876. Acts 1876, p. 295.

Appellant claims that he has violated no law of the state, because the above-named act is not in force in Victoria County. He contends that said act is a *local*, and not a *general*, law; and, as such, is not in force in any county of the state where it has not been submitted to a vote of the freeholders of that county and approved by them, as required by section 23, article 16, of the Constitution of 1876; that, there being no provision made in the act itself, or anywhere else, for submitting it to the vote of the freeholders of any section — no means provided for setting the machinery in motion for its submission to the vote of the people — it is inoperative and lifeless, if not null and void.

This proposition seems to be very plain, and abundantly sustained by a mere glance at section 23, article 16, General Provisions of the Constitution of 1876. It reads as follows : " The Legislature may pass laws for the regulation of live stock and the protection of stock-raisers in the stock-raising portion of the state, and exempt from the operation of such laws other portions, sections, or counties ; and shall have power to pass general and special laws for the inspection of cattle, stock, and hides, and for the regulation of brands ; *provided*, that any local law thus passed

shall be submitted to the freeholders of the section to be affected thereby, and approved by them, before it shall go into effect."

Section 46 of the act of the Legislature in question exempts from the operation of the act sixty-two counties. Those excepted counties embrace about one-fourth of the territory of the state; they comprise at least one-half of the population and two-thirds of the wealth. It is not a *general* law, to be enforced uniformly throughout the entire limits of the state, but is limited to the counties not enumerated in the exemption in section 46. It is conceded that Victoria is not among these.

The proper and legal definition of the words "general," "special," and "local," as used in the above-quoted section of the Constitution, has a large influence in determining the proper construction of the statute under consideration. The lexicographers whose authority is universally conceded are as follows :

Worcester says : "General — Belonging or relating to a whole genus, class, or order; ecumenical; of, or pertaining to, all of the kind, race, or family; opposed to partial or special; as, a general law, etc." "Local — Pertaining, confined, or limited to a place; as, local customs."

Webster says : "General — 1. Relating to a whole genus or kind ; and, hence, relating to a whole class or order. Thus, we speak of a general law of the animal or vegetable economy. 2. Comprehending many species or individuals; not special or particular. 4. Public; common; relating to or comprehending the whole community; as, the general interest or safety of a nation. 7. Having relation to all; common to the whole." "Local — 1. Pertaining to a place, or to a fixed or limited portion of space. 2. Limited or confined to a spot, place, or definite district." "Special — A special statute is a private act of the Legislature, such as respects a private person or individual."

The two words, "local" and "special," are frequently used as convertible terms; indeed, Worcester gives "special" as one of the synonyms of "local;" and "special" is derived from the Latin word "*specialis*," which means individual, not general.

Applying these standard definitions of the words employed, it is evident that the statute under consideration is such a *special* or *local* law as was contemplated, by this section of the Constitution, to be "submitted to the freeholders of the section to be affected thereby, and approved by them."

These definitions also agree with those of eminent jurists and legal writers. Statutes, they say, are divided into, first, public; second, private. Public statutes are further divided into general and local. These divisions are made and recognized chiefly for the convenience of determining which shall be taken cognizance of by the courts, without the necessity of pleading and proving them. Private statutes must be pleaded and proved, unless they are rendered public for this purpose by the Legislature; but the courts will take judicial cognizance of public statutes, whether general or local.

The use of the words "special" and "local," in this provision of the Constitution, was not made in this sense, however, but was evidently used as descriptive of a law that was intended to operate in a section of the territory within the jurisdiction of the law-making power — the limits of the entire state — less than the whole.

That the proviso in section 23, above quoted, controls and governs the whole section seems too plain and well settled to admit of serious doubt; but, as the learned counsel for the state has advanced the proposition that it applies only to the second clause of the section, and not to the first clause, which precedes the semicolon in the middle of the section, it may not be improper to advert to it.

Some light is thrown upon this part of the question by the journal of the Constitutional Convention. Upon an examination it will be found that section 23 was not in the original draft of article 16. Its first appearance is found on page 690, as follows:

" Mr. Waelder offered the following additional section: Sec. ——. The Legislature may pass laws for the regulation of live stock and the protection of stock-raisers in the stock-raising portions of the state, and exempt from the operation of such laws other portions, sections, or counties ; *provided*, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby, and approved by them, before it shall go into effect. Adopted."

This is exactly as the section now stands, with the exception of the second clause. The proviso here certainly applies to, and governs and controls, the first, the only other clause in it so far. But on page 777 of the journal it is seen how the second clause got in, as follows :

" Mr. Murphy offered the following amendment: Strike out section 35, and insert in section 23, in line 121, between the word ' counties ' and the word ' provided,' the following words : ' And shall have power to pass general and special laws for the inspection of cattle, stock, and hides, and for the regulation of brands.' Adopted."

And this is the second clause as it now stands. It certainly cannot be seriously contended that the insertion of the second clause, without removing the semicolon, removed the proviso, with its controlling power, one degree further from the first clause, and thus changed and perverted the intention of the original section.

If this proviso means anything at all, and it certainly does ; if it has any force or effect whatever, and it certainly has, it applies to, and governs and controls, the whole section.

That the fifteenth Legislature also thought so is shown

from an examination of an act entitled "An act to carry into effect sections 22 and 23, article 16, of the Constitution of the state of Texas, authorizing the passage of stock and fence laws." Acts 1876, p. 150. This statute is a "local option" law. It provides a mode for its submission to a vote of the people of the section to be affected thereby before it can go into effect. This authority for its submission to the people is not found in section 22, article 16, of the Constitution, which is as follows:

"The Legislature shall have the power to pass such fence laws, applicable to any subdivision of the state, or counties, as may be needed to meet the wants of the people."

Such authority can only be found in the proviso to section 23; and the very first words of the first clause of section 23, viz., "the Legislature may pass laws for the regulation of live stock," seem to authorize this fence law. It is nothing more nor less than a "law for the regulation of live stock;" and a mode was provided for submitting it to a vote of the people, as is required by the proviso of section 23. Unless the Legislature believed that section 23 authorized them to pass this law for the "regulation of live stock," and to provide for its submission to a vote of the people, they must have thought that the proviso to section 23 applied to, and governed and controlled, section 22 also. Otherwise it is without any authority whatever. If the first words of section 23 do not authorize the passage of the "local option" fence law, then that authority must be derived from section 22; but section 22 does not authorize the submission of any law to the people for their adoption, and section 23 does. If, then, the able counsel for the state is correct in his proposition, the "fence law," as it may be called, is unconstitutional, null, and void. The evils resulting from the establishment of that proposition would be tenfold greater than from the plain, simple one contended for by appellant.

*J. E. Ferguson,* also for the appellant.

*H. H. Boone,* Attorney General, for the State. It occurs to me that the learned counsel for the appellant have fallen into the grave error that a state Legislature must look to the Constitution for *authority* to enact a law. One of them says : " The power of the Legislature to enact any law whatever is derived from, and limited by, the Constitution." Another says : " Such authority " (to enact a law and to submit it to a vote of the people of the section to be affected) " can only be found " in a proviso to a cited section of the Constitution, and, if not found there, " it is without any authority whatever."

Judge Cooley seems to entertain a different view of the power and authority of a state Legislature to enact laws. He says : " In creating a legislative department, and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically-defined legislative powers, but is intrusted with the general authority to make laws at discretion." Const. Lim. 86.

" The people, in framing the Constitution," says Denio, C. J., " committed to the Legislature the whole law-making power of the state which they did not expressly or impliedly withhold. Plenary power in the Legislature for all purposes of civil government is the rule ; a prohibition to exercise a particular power is an exception. In inquiries, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is *forbidden.*" Const. Lim. 87.

VOL. III — 24.

"It has never been questioned, so far as I know," says Redfield, C. J., "that the American Legislatures have the same unlimited power in regard to legislation which resides in the British Parliament, except where they are restrained by written constitutions. That must be conceded, I think, to be a fundamental principle in the political organization of the American states. We cannot well comprehend how, upon principle, it should be otherwise. The people must, of course, possess all legislative power originally. They have committed this, in the most general and unlimited manner, to the several state Legislatures, saving only such restrictions as are imposed by the Constitution of the United States, or of the particular state in question." Const. Lim. 88.

Bearing in mind this "fundamental principle," as there is no pretense that the law under consideration is violative of the Constitution of the United States, we must look to our state Constitution to see whether the Legislature was prohibited from passing this law.

[In support of his position that the act in question is not a local law, but a general law, affecting the entire state, though limited locally in some of its provisions, the attorney general proceeded to collate and comment upon the various constitutional provisions bearing upon the question, and cited Cooley's Const. Lim. 128, 190; *Connor* v. *Mayor of New York*, 5 N. Y. 258; *Williams* v. *The People*, 24 N. Y. 407; *The State* v. *Lean*, 9 Wis. 285; *Healey* v. *Dudley*, 5 N. Y. 125; *Pierce* v. *Kimbal*, 9 Me. 45; *Smith* v. *Judge*, 17 Cal. 548. — Reporters.]

Ector, P. J.. The defendant was tried in the County Court of Victoria County upon an information filed by the county attorney, the information being based upon an affidavit charging him with purchasing certain hides of cattle

without obtaining a bill of sale therefor from the owner or agent, as required by section 39 of the act of August 23, 1876. Gen. Laws, 303. That section reads as follows:

" Any person who shall purchase any animals, or hides of cattle, without obtaining a bill of sale from the owner or his agent, as required by sections eleven and twelve of this act, shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than twenty dollars nor more than one hundred dollars for each animal or hide so purchased."

Sections 11 and 12 of said act read as follows:

" Sec. 11. Every person who shall buy or drive any animal for sale or shipment out of any county in this state, or who shall buy or drive any animal or animals for slaughter, shall, at the time of purchasing and before driving the same, procure a bill of sale from the owner or owners thereof, or from his or their legally authorized agent, which bill of sale shall be in writing, properly signed and acknowledged before some officer authorized to authenticate instruments for record in this state; such bill of sale shall distinctly enumerate the number, kind, and age of animals sold, together with all the marks and brands discernible on said animals; said animals shall, before leaving the county in which they have been gathered, be inspected by the inspector of such county or his deputy.

" Sec. 12. Every person who shall purchase any hides of cattle shall, at the time of purchasing the same, obtain from the owner thereof, or from his legally-authorized agent, a bill of sale in writing, certified to by the inspector or by any officer authorized to take acknowledgements, which bill of sale shall recite in full the marks and brands of each hide, the weight thereof, and whether the same is dry or green."

The defendant moved to quash the information, " because said information fails to charge any offense known to the

laws of the state, because the act under which it is presented is repugnant to the Constitution.'' The motion to quash was overruled; to which ruling of the court defendant excepted. The jury found the defendant guilty of having purchased three hides of cattle without obtaining bills of sale therefor, and assessed his punishment at $60 fine.

The ground mainly relied on in the court below, by the defendant, and also in this court for a reversal of the judgment and the dismissal of the case, is that the act of August 23, 1876, entitled '' An act to encourage stock-raising, and for the protection of stock-raisers,'' is in violation of the Constitution of this state, in that the Legislature did not provide for submitting the act to a vote of the freeholders of the section to be affected thereby for its adoption in the manner required by the 23d section of article 16 of the Constitution of this state. On the part of the appellant it is claimed that, to determine against the validity of the act referred to on account of the objections urged, it is only necessary to call the attention of this court to the language employed by the framers of the Constitution when they ingrafted section 23 of article 16 in the '' general provisions'' of the Constitution.

Section 23 reads as follows: '' The Legislature may pass laws for the regulation of live stock and the protection of stock-raisers in the stock-raising portion of the state, and exempt from the operation of such laws other portions, sections, or counties; and shall have power to pass general and special laws for the inspection of cattle, stock, and hides, and for the regulation of brands; *provided*, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby, and approved by them, before it shall go into effect.''

There is no question of the power of the courts to pronounce unconstitutional acts invalid, for this power results from the duty of courts to give effect to the laws, of which

the Constitution is the highest, which could not be administered at all if nullified at the will or by the acts of the Legislature. But it is equally well-settled that this power is not to be exercised in doubtful cases, but a just deference for the legislative department enjoins upon the courts the duty to respect its will, unless the act is clearly inconsistent with the fundamental law, which all members of the several departments are sworn to obey. The Legislature can pass no law in violation of either the Federal or state Constitution.

In construing the 23d section of the 16th article of the Constitution, what we are to seek is the thought which it expresses. To ascertain this, the rule of construction applicable is that effect is to be given, if possible, to the whole instrument, and to every section and clause of it. To ascertain this, the first resort in all cases is to the natural significations of the words employed. It is a proper rule of construction that the whole is to be examined with a view of arriving at the true intent of each part. If different portions seem to conflict, the courts should harmonize them, if practicable, and lean in favor of a construction which will render every part operative, rather than one which will make some idle and nugatory. This rule of construction is especially applicable to written Constitutions.

Mr. Cooley says : " It is scarcely conceivable that a case can arise where a court would be justifiable in declaring any portion of a written Constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together." Cooley's Const. Lim. 57.

Now, construing this section with the other provisions of the Constitution, was the Legislature, either expressly or by implication, forbidden from passing the law under conideration?

The Legislature is prohibited from passing any *local* law for the regulation of live stock, and for the protection of stock-raisers, and for the inspection of cattle, stock, and hides, etc., to take effect until submitted to the freeholders to be affected thereby, and approved by them. Yet it is authorized to pass general laws for the regulation and protection of stock-raisers in the stock-raising portions and counties of the state, and to exempt from their operation other portions and counties, and to pass general laws for the inspection of hides and cattle.

We think the words *local* and *special* are used in said section 23 as synonymous terms, and that it only intends that local laws of the kind mentioned in this section shall be submitted to the freeholders to be affected by it; and that the proviso refers to both the preceding clauses of the section, yet that it does not destroy either of them.

The argument of the learned counsel for the defendant is that a law exempting from its operation any portion or county of the state is a local law; that such a law can have no force and effect until submitted to, and ratified by, the freeholders of the portion or county to be affected by it. In this opinion we do not concur. The context of the section shows that the framers did not consider a law exempting certain counties a local law. The construction contended for by the counsel for the defendant would render of no force and effect the provision in the section that the Legislature might exempt certain portions or sections from the operation of such law; for, if the Legislature cannot pass such a law without submitting it to a vote of those to be affected by it, then that proviso of the Constitution is without any vitality whatever; and the construction which leads to such result is in direct and flagrant violation of the rule of construction already quoted.

The law under which the information was filed in the case at bar was intended to operate generally in the stock-raising portions of the state, and with an equally general exemption

of the non-stock-raising portions of the state ; and to such an act we believe the " proviso " was never intended to apply, but to a special law affecting merely a particular locality or county, in which we may suppose a vote of the freeholders to be affected can be taken.

The language of the Constitution does not seem to contemplate submitting the operation of the law to the vote of the freeholders of the different sections of the state, and that it shall have effect in the one or the other according to the vote in each section, as doubtless would have been the case if the proviso had been intended to be applied to a law such as is under consideration.    But it is just what we may suppose it would have been if intended to be a local law applicable to a special locality only.    It was intended to protect the great stock-raising portions of the entire state by making it difficult for unscrupulous men to deal in or dispose of stolen cattle, hides, etc., without being caught. The Legislature believed this could be accomplished by placing inspectors of cattle and hides where cattle were largely raised.    And the counties where there were no inspectors were affected by the law.    All citizens have an interest in the suppression of crime and in the protection of property ; and persons living in the exempted counties are benefited by having inspectors in their adjoining markets and counties.

There is another constitutional question which presents itself, in examining the statute under consideration, which is not raised and discussed by counsel for appellant, and the consideration of which may not be necessary in deciding this case.    Section 19 of the Bill of Rights reads : " No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by due course of the law of the land."    The question is whether certain provisions of the statute are violative or not of this section of the Bill of Rights.    See secs.

18, 19, 29, 44 of the statute; Cooley's Const. Lim. 353; Potter's Dwar. on Stat. 468 *et seq.*, p. 444 *et seq.*

The provisions of the sections above cited of the act are analogous to our laws providing for the sale of estrays, regulating the disposition of stolen property, and to town or city ordinances impounding animals. They do not, any of them, deprive the citizen of his property without due course of law. These sections were intended for the benefit of the true owners of the property.

We believe that the evidence is sufficient to sustain the verdict and judgment. The judgment is, therefore, affirmed. *Affirmed.*